UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-10602 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| IAA, INC., JOHN P. LARSON, BRIAN | : **SECURITIES EXCHANGE ACT OF** |
| BALES, WILLIAM BRESLIN, SUE GOVE, | : **1934** |
| LYNN JOLLIFFE, PETER H. KAMIN, OLAF | : |
| KASTNER, JOHN W. KETT, and MICHAEL | : **JURY TRIAL DEMANDED** |
| SIEGER, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against IAA, Inc. ("IAA or the "Company") and the members IAA's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between IAA and Ritchie Bros. Auctioneers Incorporated ("Ritchie Bros.").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on December 14, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby (i) Impala Merger Sub I, LLC ("Merger Sub 1"), a direct wholly owned subsidiary of Ritchie Bros. Holdings, Inc. ("US Holdings"), itself a direct and indirect wholly owned subsidiary of Ritchie, will be merged with and into the Company, IAA surviving as an indirect wholly owned subsidiary of Ritchie Bros. and a direct wholly owned subsidiary of US Holdings; and (ii) immediately following, the surviving corporation will be merged with and into Impala Merger Sub II, LLC ("Merger Sub 2") with Merger Sub 2 surviving as a direct wholly owned subsidiary of US Holdings (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on November 7, 2022 (the "Merger Agreement"), each IAA stockholder will receive either (i) 0.5804 shares of Ritchie common stock; and (ii) $10.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked IAA's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to IAA's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the Company's stock trades on the New York Stock Exchange, headquartered in this District; and (ii) the Company's Proxy Solicitor, Innisfree M&A Incorporated, is also headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of IAA stock and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant John P. Larson has served as a member of the Board since June 2019 and is the Chairman of the Board.

11. Individual Defendant Brian Bales has served as a member of the Board since June 2019.

12. Individual Defendant William Breslin has served as a member of the Board since June 2019.

13. Individual Defendant Sue Gove has served as a member of the Board since June 2019.

14. Individual Defendant Lynn Jolliffe has served as a member of the Board since June 2019.

15. Individual Defendant Peter H. Kamin has served as a member of the Board since June 2019.

16. Individual Defendant Olaf Kastner has served as a member of the Board since June 2019.

17. Individual Defendant John W. Kett has served as a member of the Board since June 2019 and is the Company's Chief Executive Officer.

18. Individual Defendant Michael Sieger has served as a member of the Board since April 2022.

19. Defendant IAA is a Delaware corporation and maintains its principal offices at Two Westbrook Corporation Center, Suite 500, Westchester, Illinois 60154. The Company's stock trades on the New York Stock Exchange under the symbol "IAA."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

22. IAA operates a digital marketplace that connects vehicle buyers and sellers. The Company's platform facilitates the marketing and sale of total loss, damaged, and low-value vehicles for a range of sellers. It provides buyers with various bidding/buying digital channels,

vehicle merchandising, evaluation services and online bidding tools, and replacement part inventory. The Company serves a buyer base and spectrum of sellers, including insurance companies, dealerships, fleet lease and rental car companies, and charitable organizations. It has approximately 200 facilities in the United States, Canada, and the United Kingdom. IAA, Inc. was founded in 1982 and is headquartered in Westchester, Illinois.

23. On November 7, 2022, the Company and Ritchie Bros. announced the Proposed Transaction:

> **VANCOUVER, BC, and WESTCHESTER, Ill. –November 7, 2022** - Ritchie Bros. Auctioneers Incorporated (NYSE: RBA) (TSX: RBA), (the "Company" or "Ritchie Bros.") and IAA, Inc. (NYSE: IAA), today announced that they have entered into a definitive agreement under which Ritchie Bros. will acquire IAA in a stock and cash transaction valued at approximately $7.3 billion including the assumption of $1.0 billion of net debt.1 The transaction has the unanimous support of both boards of directors.
>
> Under the terms of the merger agreement, IAA stockholders will receive $10.00 in cash and 0.5804 shares of Ritchie Bros. common stock for each share of IAA common stock they own. The purchase price of $46.88 per share represents a premium of approximately 19% to the closing share price of IAA common stock on November 4, 2022, and 23% to the 10-day volume-weighted average price, using Ritchie Bros.' 10-day volume-weighted average price on the NYSE of $63.55. The total purchase price also reflects a transaction multiple of 13.6x IAA's last twelve-month Adjusted EBITDA2 as of October 2, 2022. Upon completion of the transaction, Ritchie Bros. stockholders will own approximately 59% of the combined company and IAA stockholders will own approximately 41%.
>
> IAA is a leading global digital marketplace connecting vehicle buyers and sellers, and the transaction will diversify Ritchie Bros.' customer base by providing the Company with a significant presence in the vehicle remarketing vertical that has strong industry fundamentals with proven secular growth. The combination will accelerate its growth and strategic vision to create a next-generation global marketplace for commercial assets and vehicles, supported by advanced technologies and data analytics. Additionally, the Ritchie Bros. management team has extensive experience in the

automotive and insurance ecosystem, which will help shape the go-forward customer experience. With enhanced scale and an expanded addressable market, Ritchie Bros. will be able to drive additional Gross Transaction Value ("GTV") growth through its platforms and auction sites, in turn generating more insights for its customers and expanding the adoption of Ritchie Bros.' other high-margin tech-enabled services.

"IAA accelerates our journey to become the trusted global marketplace for insights, services, and transaction solutions," said Ann Fandozzi, CEO of Ritchie Bros. "Their highly complementary business in an adjacent vertical will allow us to unlock additional growth. Through our trusted brands, similar operating model, and complementary services, we expect to drive efficiencies and create a more resilient business."

Fandozzi continued, "This announcement is a testament to the passion and dedication of the Ritchie Bros. and IAA teams. We expect this transaction to create new and exciting growth and development opportunities for employees of both Ritchie Bros. and IAA as we scale our combined business. As we do so, we will continue to foster our aligned culture and shared values grounded in supporting and empowering our team to create a best-in-class customer experience."

"Together, IAA and Ritchie Bros. will have expanded global operations, accelerating international buyer development and enhancing ancillary services such as transportation and finance," said John Kett, CEO and President of IAA. "The transaction will also provide compelling value to stockholders through the immediate cash component and the opportunity to participate in the substantial growth potential of our combined company with significant resources. I believe that very appealing new opportunities are ahead for IAA employees and new capabilities for customers as we enter this exciting new chapter with Ritchie Bros."

**Compelling Strategic and Financial Benefits**

- **Creates a Leading Global Marketplace for Commercial Assets and Vehicles:** Combining Ritchie Bros. and IAA's product offerings immediately creates a leading global marketplace for commercial assets and vehicles with pro forma GTV1 of approximately $14.5 billion for the last 12 months ended September 30, 2022 and pro forma revenue1 and Adjusted EBITDA1,3 of approximately $3.8 billion and approximately $1.0 billion, respectively, excluding the impact of synergies. The combined

company's increased scale will allow it to build out its integrated digital marketplace.

- **Provides Diversification Benefits with Entry into Adjacent Vehicle Market:** The transaction represents Ritchie Bros.' entry into the large and steadily growing vehicle sector.IAA is an established market leader, currently delivering annual GTV of approximately $8.6 billion. It is one of the most trusted brands in the industry, with long-standing customer relationships. Adding a successful business in a new vertical will diversify Ritchie Bros.' business by both customer and geography and create a more resilient business model to perform through market cycles.

- **Expands Local Yard Footprint to Broaden Customer Reach and Provide Enhanced Service:** By combining IAA's existing footprint of more than 210 facilities across the United States, Canada and Europe with Ritchie Bros.' existing footprint of over 40 owned and 24 leased facilities globally, the combined company will have new opportunities to advance its yard strategy more efficiently in key regions across the United States and internationally. The expanded real estate base will provide the company with additional flexibility to drive profitable growth by strategically leveraging capacity to best serve customers across both businesses. This includes leveraging Ritchie Bros.' footprint to expand IAA's broader capacity, including for catastrophic weather events. The combined real estate footprint also increases Ritchie Bros.' proximity to a broader customer base and local yards, allowing it to provide faster service and reduce transportation time and costs, enhancing the overall experience for customers.

- **Advances Ritchie Bros.' Digital Marketplace Development:** This combination brings together the best capabilities of both Ritchie Bros. and IAA.Marketplace technology investments are expected to drive enhanced returns as they will be amortized over significantly more units. Moving forward, the combined company will offer expanded access to additional insights, services, and transaction solutions to a wider customer base.

- **Unites Two Highly Complementary Businesses with Significant Synergy Potential:** The companies expect to achieve $100 to $120+ million in annual run-rate cost synergies by the end of 2025, driven primarily through consolidating back office, finance and technology, general and administrative, and operations.

- **Delivers Meaningful Earnings Accretion:** The transaction is expected to be accretive to Ritchie Bros.' adjusted earnings per

7

share by low single digits in the first full year following the transaction close and mid-teens accretive after that.

**Integration Plan, Leadership and Board of Directors**

Ann Fandozzi will continue to serve as CEO of the combined company.

The Ritchie Bros. Board of Directors will expand to add IAA CEO and President John Kett and three other current members of the IAA Board following the close of the transaction. Erik Olsson, chairman of the Ritchie Bros. Board, will serve as chairman of the Board of the combined company.

Ritchie Bros. will continue to be legally incorporated in Canada and will retain its offices and employee base in Burnaby, British Columbia and IAA's Chicago, Illinois offices will serve as the official headquarters of the combined company. As of the transaction closing, approximately two thirds of the workforce will be in the United States on a combined basis.

Following the transaction close, Ritchie Bros. will continue to trade under the symbol RBA on both the NYSE and TSX.

**Timing to Close, Approvals and Financing**

The transaction is expected to close in the first half of 2023 subject to approval by Ritchie Bros. stockholders of the issuance of Ritchie Bros. stock in connection with the transaction and approval of IAA stockholders of the transaction, receipt of regulatory approvals and other customary closing conditions.

Ritchie Bros. intends to fund the cash consideration of the transaction through a combination of cash on hand and new debt. The Company has bridge financing commitments in place from Goldman Sachs, Bank of America, and Royal Bank of Canada. At closing of the transaction, the combined company is expected to have a pro forma leverage ratio of approximately 3x net debt to adjusted EBITDA. Additionally, Ritchie Bros. will prioritize de-leveraging following the close of the transaction. Ritchie Bros. also intends to maintain its current quarterly dividend of $0.27 per share and will consider future increases as the Company de-levers its balance sheet.

* * *

**Advisors**

Goldman Sachs & Co. LLC served as lead financial advisor and Guggenheim Securities, LLC served as co-lead financial advisor to Ritchie Bros. Evercore and RBC Capital Markets also served as financial advisors to Ritchie Bros. J.P. Morgan Securities LLC served as financial advisor to IAA. Goodwin Procter LLP, McCarthy Tétrault LLP and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisors to Ritchie Bros. and Cooley LLP and Blake, Cassels & Graydon LLP served as legal advisors to IAA.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that IAA's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

25. On December 14, 2022, IAA and Ritchie Bros. jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the financial advisors in their analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Ritchie Bros. which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of Ritchie Bros. and IAA prepared certain non-public financial forecasts (the "Ritchie Bros. Projections," "Company Projections," and "Pro Forma Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Ritchie Bros. Projections, the Company Projections, the Pro Forma Projections, and IAA Synergies Forecasts, as prepared by Ritchie Bros management and Company management, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2026: EBITDA, Adjusted EBITDA, Unlevered Free Cash Flow, and NOPAT, but fails to provide line items used to calculate these metrics ***and/or*** a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for IAA*

31. With respect to J.P. Morgan's *Selected Public Trading Multiples Analysis*, the Registration Statement fails to disclose the financial metrics of each of the companies selected by J.P. Morgan for the analysis.

32. With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose: (i) the financial metrics of each of the transactions selected by J.P. Morgan for the analysis; and (ii) the reason why the Iron Planet, Inc. – RBA transaction and the ADESA, Inc. – Carvana Co. transaction were "for reference only."

33. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of the Company; (ii) the inputs and assumptions underlying the terminal growth rate ranging 2.00% to 3.00%; (iii) the inputs and assumptions underlying the discount rate ranging from 9.00% to 11.00%; (iv) the Company's weighted average cost of capital as analyzed by J.P. Morgan; (v) the net debt of IAA as of September 30, 2022; and (vi) the number of shares of Company stock on a fully diluted basis.

34. With respect to J.P. Morgan's *Analyst Price Target* analysis, the Registration Statement fails to disclose: (i) the research analysts selected; and (ii) the price targets published by each selected research analyst.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Ritchie Bros.*

35. With respect to J.P. Morgan's *Selected Public Trading Multiples Analysis*, the Registration Statement fails to disclose the financial metrics of each of the companies selected by J.P. Morgan for the analysis.

36. With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose: (i) the financial metrics of each of the transactions selected

by J.P. Morgan for the analysis; and (ii) the reason why the ADESA, Inc. – Carvana Co. transaction was "for reference only."

38. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of Ritchie Bros.; (ii) the inputs and assumptions underlying the terminal growth rate ranging 2.50% to 3.50%; (iii) the inputs and assumptions underlying the discount rate ranging from 8.75% to 10.25%; (iv) Ritchie Bros.'s weighted average cost of capital as analyzed by J.P. Morgan; (v) the net debt of Ritchie Bros. as of September 30, 2022; and (vi) the number of shares of Ritchie Bros. stock on a fully diluted basis.

38. With respect to J.P. Morgan's *Analyst Price Target* analysis, the Registration Statement fails to disclose: (i) the research analysts selected; and (ii) the price targets published by each selected research analyst.

*Omissions and/or Material Misrepresentations Concerning Other Analyses*

39. With respect to J.P. Morgan's *Discounted Cash Flow Analysis of Synergies*, the Registration Statement fails to disclose: (i) the terminal values of for the projected net synergies at the end of the 10 calendar years following completion of the Proposed Transaction; (ii) the inputs and assumptions underlying the terminal growth rate of 2.50%; (iii) the inputs and assumptions underlying the discount rate ranging from 8.75% to 10.25%; (iv) Ritchie Bros.'s weighted average cost of capital as analyzed by J.P. Morgan; (v) the inputs and assumptions underlying the run-rate of cost synergies ranging from $100 million to $120 million.

40. With respect to J.P. Morgan's *Intrinsic Value Creation Analysis*, the Registration Statement fails to disclose: (i) the sum of the implied equity values of IAA common stock and the Ritchie Bros. common shares and the inputs and assumptions underlying the 10.00% discount rate and 2.5% terminal growth rate used to discount the sum; (ii) the estimated present value of the

projected net synergies and the inputs and assumptions underlying the 9.50% discount rate and a 2.5% terminal growth rate; (iii) the aggregate amount of cash consideration to be paid to holder of IAA common stock; (iv) estimated transaction expenses; and (v) the equity ownership percentage of the combined company.

41.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

44.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the

Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

46. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

47. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of IAA within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of IAA, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of IAA, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of IAA, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

52. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 15, 2022　　　　　　　　　　**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*